No. 23-1717

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————————

MARK MCEVOY, *et al.*,

*Plaintiffs-Appellees,*

v.

DIVERSIFIED ENERGY COMPANY PLC, *et al.*,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the Northern District of West Virginia,
No. 5:22-cv-00171

———————————

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

———————————

Howard Persinger, III
PERSINGER & PERSINGER, L.C.
237 Capitol Street
Charleston, WV 25301
(304) 346-9333

Daniel Donovan, P.C.
John C. O'Quinn, P.C.
Ragan Naresh, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5267

*Counsel for Defendants-Appellants Diversified Energy Company PLC,
Diversified Production LLC, and Diversified Gas & Oil Corporation*
(additional counsel listed in signature block)

January 22, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...........................................................................i

TABLE OF AUTHORITIES ..............................................................iii

INTRODUCTION ................................................................................. 1

ARGUMENT ......................................................................................... 6

I.    Plaintiffs Misconstrue West Virginia Law And Its Relevance To Their Claims. .......................................................... 6

II.    WVDEP Is A Necessary Party Under Rule 19(a)..................... 12

    A.    The District Court Cannot Afford "Complete Relief" In WVDEP's Absence. ........................................................... 12

        1.    Plaintiffs' remedy for their "common law" claims is either incomplete or illusory without WVDEP............ 13

        2.    Plaintiffs' remedy for their transfer claims is also dependent on WVDEP. ................................................. 19

    B.    The District Court's Adjudication Of Plaintiffs' Claims Would Impair WVDEP's Interests. ....................... 21

        1.    Adjudication of the merits in WVDEP's absence threatens WVDEP's contractual interests.................. 22

        2.    Adjudication of the merits in WVDEP's absence threatens WVDEP's regulatory interests. ................... 24

        3.    Plaintiffs' fail to recognize that even money is coercive. ....................................................................... 27

    C.    The District Court's Adjudication Of Plaintiffs' Claims Would Subject Diversified To A Substantial Risk Of Double, Multiple, Or Inconsistent Obligations. ...................................................................... 28

III.    WVDEP Is An Indispensable Party Under Rule 19(b) Who Cannot Be Joined Because Of Sovereign Immunity. ................ 31

CONCLUSION ...................................................................................... 35

CERTIFICATE OF COMPLIANCE ...................................................... 37

CERTIFICATE OF SERVICE .............................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkinson v. Virginia Oil & Gas Co.*,
  79 S.E. 647 (W.Va. 1913) ..................................................... 12

*Balt. Neighborhoods, Inc. v. LOB Inc.*,
  92 F.Supp.2d 456 (D.Md. 2000) ......................................... 18

*Bomer-Blanks Lumber Co. v. Oryx Energy Corp.*,
  837 F.Supp. 769 (M.D.La. 1993) ........................................ 23

*Bragg v. W.Va. Coal Ass'n*,
  248 F.3d 275 (4th Cir. 2001) .............................................. 24

*Cachil Dehe Band of Wintun Indians v. California*,
  547 F.3d 962 (9th Cir. 2008) ......................................... 22, 24

*Citizens for a Better Environment-California v. Union Oil Co.*,
  861 F.Supp. 889 (N.D.Cal. 1994), *aff'd*, 83 F.3d 1111
  (9th Cir. 1996) ..................................................................... 24

*Cohen v. Beneficial Industrial Loan Corp.*,
  337 U.S. 541 (1949) ............................................................... 5

*CSX Transp. Inc. v. PKV Ltd. P'ship*,
  906 F.Supp. 339 (S.D.W.Va. 1995) .................................... 11

*Davis ex rel. Davis v. United States*,
  192 F.3d 951 (10th Cir. 1999) ............................................ 21

*Davis ex rel. Davis v. United States*,
  343 F.3d 1282 (10th Cir. 2003) ............................................ 8

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*,
  932 F.3d 843 (9th Cir. 2019) .............................................. 24

*Doe v. Virginia Dep't of State Police,*
    713 F.3d 745 (4th Cir. 2013) ............................................................ 16

*Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel,*
    883 F.2d 890 (10th Cir. 1989) .......................................................... 31

*EQT Prod. Co. v. Wender,*
    870 F.3d 322 (4th Cir. 2017) ........................................................ 9, 11

*Florida Wildlife Federation Inc. v. U.S. Army Corps of Engineers,*
    859 F.3d 1306 (11th Cir. 2017) ................................................ 7, 33, 34

*Gensetix, Inc. v. Board of Regents of University of Texas System,*
    966 F.3d 1316 (Fed.Cir. 2020) ......................................................... 31

*Gunvor SA v. Kayablian,*
    948 F.3d 214 (4th Cir. 2020) ....................................................... 22, 24

*Ex parte HealthSouth Corp.,*
    974 So.2d 288 (Ala. 2007) ............................................................... 20

*Kelleam v. Md. Cas. Co. of Balt.,*
    312 U.S. 377 (1941) ................................................................... 14, 27

*Hammons v. W.Va. Off. of Ins. Comm'r,*
    775 S.E.2d 458 (W.Va. 2015) ......................................................... 18

*Lee v. Anthony Lawrence Collection, L.L.C,*
    47 F.4th 262 (5th Cir. 2022) ....................................................... 22, 32

*Magers v. Chesapeake Appalachia, L.L.C,*
    2013 WL 4099925 (N.D.W.Va. Aug. 13, 2013) ............................. 10, 11

*Northrop Corp. v. McDonnell Douglas Corp.,*
    705 F.2d 1030 (9th Cir. 1983) ......................................................... 22

*Ohio Valley Environmental Coalition, Inc. v. Maple Coal Co.,*
    808 F.Supp.2d 868 (S.D.W.Va. 2011) .......................................... 29, 30

*Pusey & Jones Co. v. Hanssen*,
261 U.S. 491 (1923) .................................................... 14

*Reed v. Phillips*,
452 S.E.2d 708 (W.Va. 1994) ................................... 9

*Republic of Phil. v. Pimentel*,
553 U.S. 851 (2008) ...................................... 6, 31, 33

*United States v. Atlantic Wood Industries, Inc.*
330 F.R.D. 435-437 (E.D.Va. 2019) ....................... 13

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ................................................ 18

*Whiteman v. Chesapeake Appalachia, L.L.C.*,
729 F.3d 381 (4th Cir. 2013) ................................. 11

*Yashenko v. Harrah's NC Casino Co.*,
446 F.3d 541 (4th Cir. 2006) ................................ 26

## Statutes

Ala. Code §8-9A-4 ..................................................... 20

Ala. Code §8-9A-7 ............................................... 19, 20

Ala. Code §8-9B-5 ..................................................... 20

Ala. Code §8-9B-8 ............................................... 19, 20

W.Va. Code §22-1-1 .............................................. 16, 17

W.Va. Code §22-6-11 .................................................. 17

W.Va. Code §22-6-19 ........................................... 3, 6, 17

W.Va. Code §22-6-23 ............................................. 19, 29

W.Va. Code §22-6-24 ............................................. 19, 29

W.Va. Code §22-6-28.................................................. 17, 19, 29, 34

W.Va. Code §22-7-1.......................................................... 10

W.Va. Code §22-7-4.......................................................... 10

W.Va. Code §22-7-8.......................................................... 10

W.Va. Code §22-10-11....................................................... 10

W.Va. Code §29A-1-1........................................................ 34

**Regulations**

W.Va. Code R. §35-4-10............................................... 19, 20, 29

W.Va. Code R. §35-4-13.................................................... 16

W.Va. Code R. §35-6-3.................................................. 15, 19

W.Va. Code R. §35-6-7.................................................. 17, 23

**Rules**

Fed. R. Civ. P. 19 ...................... 2, 3, 5, 8, 12, 21, 23 24, 25, 27, 28, 31, 32

**Other Authorities**

13 James Wm. Moore et al., *Moore's Federal Practice*
 ¶66.04[2][a] (2023) ............................................................ 27

## INTRODUCTION

This appeal arises out of Plaintiffs' misguided attempt to collaterally challenge West Virginia's comprehensive regulatory well-plugging regime and the district court's failure to dismiss given WVDEP's status as a necessary party that cannot be joined due to its sovereign immunity. Plaintiffs seek to disrupt West Virginia law and policy supporting energy development, and WVDEP-supervised well management, by asking a *federal* court to put in place a *federal* receiver to dictate *state-law* well plugging—a role the West Virginia legislature granted WVDEP alone. Plaintiffs' rejoinder is misleading in its purported reliance on "common law," and their arguments ultimately reveal their position depends on attacking WVDEP's reasoning and interpretation, both in its Consent Order and its amicus brief in this Court. That vividly demonstrates why *this* case cannot proceed in federal court.

Plaintiffs postulate that WVDEP is not required because the class seeks only to vindicate "common-law" property rights, rather than circumvent WVDEP's decision-making. But Plaintiffs disclaim all common-law remedies and identify no common-law right other than one

derived from the very *state-law statutory regime committed to WVDEP's discretion.* Along the way, they repeatedly impugn WVDEP—baselessly accusing the agency of enabling what they dub a well-plugging "Ponzi scheme" that "gamble[s]" away resources. Moreover, and as evidenced by their own arguments, to prevail they must demonstrate that WVDEP's understanding of its Consent Order—part and parcel of the agency's regulatory regime—"gets the law exactly backwards," is inconsistent with the agency's "statutory and regulatory authority," is unsupported by the terms of the "Consent Order itself," is "*ultra vires*," and is "contrary to the Legislature's express statements of policy." Indeed, Plaintiffs' demand for the immediate plugging of thousands of wells would be grossly inefficient, plainly conflicting with WVDEP's goal of having Diversified first seek to restart non-producing wells before plugging them. If ever there were a state-law attack on a state agency's sovereign prerogatives, rendering that agency a necessary party, this is it.

Plaintiffs' challenge to WVDEP's authority is obvious, as is the agency's interest in this litigation—which centers on WVDEP's comprehensive regulatory regime. Rule 19 requires WVDEP's joinder and sovereign immunity requires dismissal.

*First*, Plaintiffs provide no support for the assertion that Diversified has an independent prompt well-plugging obligation (much less a one-year duty) under West Virginia's common law. There is none. Instead, Plaintiffs' so-called "common-law" claims merely bootstrap from the *statutory* requirements of W.Va. Code §22-6-19. That is further made clear given Plaintiffs "disclaim" traditional common-law injuries (and associated remedies) and instead seek well-plugging relief derived from the statute itself. But the West Virginia legislature committed *that comprehensive regime* to WVDEP's interpretation and exclusive enforcement, while providing no private right of action. Plaintiffs cannot rely on that regime as the genesis for their "common-law" claims while simultaneously ignoring WVDEP's interpretation and implementation of it—including WVDEP's Consent Order, which sets out a "systematic" process for Diversified's well review, plugging, and reclamation, that WVDEP found was in the "best interests of … [West Virginia's] citizens."

To be clear, this Court need not decide the merits of Plaintiffs' purported common-law claims. Under Rule 19, this Court need only ask whether WVDEP has a non-frivolous interest in litigation that invites a federal court to question the decision-making of that state agency on

state-law grounds, without the agency present. It plainly does. Plaintiffs' only answer is to say WVDEP is wrong. That is conclusive proof WVDEP is both a necessary party and that deciding this case in its absence would violate West Virginia's sovereign interests.

*Second*, it is evident that WVDEP is a necessary party because the court cannot order complete relief without WVDEP's joinder. To attempt such a feat would impede WVDEP's contractual and regulatory interests and risk subjecting Diversified to double, multiple, or inconsistent obligations.

Plaintiffs' response—that they seek only money damages—rewrites their complaint, which demands the "prompt[]" and "immediate[]" plugging of wells, the "avoidance" of Diversified and EQT's transfers, and imposition of obligations on EQT. No court can order any such relief without WVDEP because none of it can be accomplished without WVDEP's regulatory permission. The same is true of Plaintiffs' demand for a federal receivership, which would vitiate WVDEP's agreement with Diversified as a practical matter. Either WVDEP would be forced to recognize that federal receiver, or that relief would be illusory. Nor would such an appointment nullify Diversified's state-law obligations, leaving

Diversified subject to liability *twice* for the same purported wrong—exactly what Rule 19 exists to prevent.

At bottom, Plaintiffs' assertion that WVDEP has no legally protected interests ignores the fact that their claims turn on the interpretation of West Virginia law committed to WVDEP as well as WVDEP's contractual interests—embodied in the Consent Order that Plaintiffs contest.

*Finally*, WVDEP's status as a necessary party with sovereign immunity compels dismissal. Plaintiffs' contrary position rests on a solitary (wrongly decided) opinion that stands against a wall of authority favoring dismissal. It also involves a misapplication of Rule 19(b). Plaintiffs disregard the prejudice to WVDEP if the matter is adjudicated in its absence (factor 1); omit any discussion of whether prejudice might be limited by the shape of relief (factor 2); misinterpret the element of adequate relief (factor 3) and; ignore their alternative avenues of relief (factor 4). The Court should reverse and remand for dismissal.[1]

---

[1] Plaintiffs rehash their appellate-jurisdiction arguments. Resp.Br.5-7. But Plaintiffs continue to forfeit the first and second prongs of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *See* Dkt.36 at 12-13. Regardless, sovereign immunity and joinder are distinct from the merits. Rule 19 does not require a full-merits adjudication, but an

# ARGUMENT

## I. Plaintiffs Misconstrue West Virginia Law And Its Relevance To Their Claims.

As a preliminary matter, it is important to be clear about Plaintiffs' so-called "common-law" claims, WVDEP's statutory regime, and the inescapable fact that the former depends on the latter.

Plaintiffs begin their response with a false narrative. Trying to distance their claims from WVDEP's comprehensive regime, Plaintiffs assert Diversified has an independent "common-law" obligation under West Virginia law to plug wells in its operatorship that have not produced in the last year. Resp.Br.7-12. But West Virginia has recognized no such common-law duty. Plaintiffs cite *nothing* identifying the common-law obligations they invent other than West Virginia Code §22-6-19 itself—a statute committed to WVDEP's interpretation and exclusive enforcement. Although Plaintiffs reference rights and obligations permeating from various "deeds and leases," Resp.Br.8-9, they assert no

_____

assessment of whether the action likely implicates non-party interests. *Id.* at 14-15. Plaintiffs' assertion that WVDEP might somehow appeal after final judgment ignores the fact that "consideration of the merits" implicating a sovereign's interests without that sovereign "[i]s itself an infringement on … sovereign immunity[.]" *Republic of Phil. v. Pimentel*, 553 U.S. 851, 864-65 (2008).

breach of contract claims nor make any individualized allegations regarding deed or lease terms. Plaintiffs' citation of the district court's order also misses the mark because the order fails to cite any West Virginia law. Resp.Br.10 (citing JA293 (discussing Alabama transfer statutes)).

To the extent Diversified has any relevant obligation to plug non-producing wells, that duty ultimately stems from the statutory scheme committed to WVDEP's exclusive enforcement. Plaintiffs' attempt to bootstrap that obligation into a private right of action (despite West Virginia's legislature denying them one) is unavailing and, at the very least, would require importing *WVDEP's interpretation* of the statutory obligations—the very thing Plaintiffs seek to circumvent.

Plaintiffs thus cannot distinguish *Florida Wildlife Federation Inc. v. U.S. Army Corps of Engineers*, 859 F.3d 1306 (11th Cir. 2017) on the basis that the plaintiffs' claims in that case "arose directly from the state statute administered by the agency" whereas theirs here do not. Resp.Br.45-46 & n.15. Plaintiffs' "common-law" claims arise (if at all) from WVDEP's statutory scheme. JA469. Notably, in the Consent Order—now part and parcel of that scheme—WVDEP wielded its

sovereign authority to determine Diversified has *not* violated its statutory or regulatory well-plugging obligations—so long as it comports with the terms and schedule in the Consent Order—and to encourage Diversified to restart non-producing wells if possible, not immediately plug them. *E.g.*, JA301-305; WVDEP.Br.4. Plaintiffs must take the bitter with the sweet.

To be clear, this Court need not decide any of that definitively—all that matters for Rule 19 purposes is that WVDEP has a non-frivolous interest in this litigation because its regulatory regime is interwoven in the tapestry of Plaintiffs' claims. Any adjudication on the merits would require a federal court sitting in diversity to interpret complex West Virginia law and regulations in the absence of the state agency charged with interpreting and applying those exact provisions—just to assess the validity of Plaintiffs' purported "common-law" rights. Rule 19 does not permit such a result. *E.g.*, *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1291 (10th Cir. 2003). Plaintiffs have no answer to *that*.

Instead, Plaintiffs attempt to elide their erroneous bootstrapping by asserting WVDEP's regime "merely elucidate[s] the scope of Diversified's common[-]law obligations." Resp.Br.17. But that fails to

dispel WVDEP's non-frivolous interests. It is also misleading. Though statutes sometimes inform common-law duties, they do so only where individual injury flows from the result of non-compliance—not from the mere fact of non-compliance. Plaintiffs' cases demonstrate as much. *Reed v. Phillips*, 452 S.E.2d 708, 710-11 (W.Va. 1994) (fire damage allegedly caused by defendants failure to conform to fire alarm regulations); *EQT Prod. Co. v. Wender*, 870 F.3d 322, 335 (4th Cir. 2017) (plaintiff may bring common-law claims implicating statutory obligation only where injury follows from statutory violation). Here, Plaintiffs assert "injury" based on the alleged non-compliance itself—the very thing WVDEP has determined is *not* a violation—and disclaim all other personal or property-based injuries. JA474 ("Plaintiffs disclaim and do not seek damages for nuisance, reduced property value, lost use of property, medical damages, business damages, methane leakage, or aggravation").

That Plaintiffs seek to enforce WVDEP's statutory requirements (even if indirectly) also demonstrates why their "savings" clause arguments are unavailing. Resp.Br.16-17. The primary "savings" provision Plaintiffs cite preserves only "common[-]law *remedies*" (i.e.,

damages from injury to property) arising from an operator's "wrongful exercise of the *contractual right* … to use the surface of the land." Resp.Br.3, 16, 40 (emphases added) (quoting W.Va. Code §22-7-4(a)). But Plaintiffs assert no breach of contract, deed, or lease, and instead purport to assert a separate common-law *action* requesting *statutory* remedies derived from a statutory obligation committed to WVDEP—for which they have no private right of action.

The other "savings" provisions simply clarify that the statutory remedies are "additional" to, or separate from, "other remedies" allowed by law. Resp.Br.3, 16-17, 40 (quoting W.Va. Code §§22-7-8, 22-10-11(a)). They create no rights, and Plaintiffs fail to identify any preexisting source for the "other remedies" they seek, distinct from WVDEP's comprehensive regime. And §22-7-1(a)(2) merely notes a legislative finding that "surface owner[s]" should be "entitled to fair compensation for the loss of the use of surface area" during initial drilling operations— not at issue in this case—and regardless, Plaintiffs "disclaim" surface damages. JA474.

Far from supporting Plaintiffs' "common law" theories, the cases they cite point in the opposite direction. *Magers v. Chesapeake*

*Appalachia, L.L.C.,* 2013 WL 4099925, at *6-7 (N.D.W.Va. Aug. 13, 2013) (W.Va. Code §22-6 is "not meant to protect individual property owners" and that "[t]he common[-]law duty underlying claims of negligence is not based on statute"); *CSX Transp. Inc. v. PKV Ltd. P'ship*, 906 F.Supp. 339, 344 n.3 (S.D.W.Va. 1995) (differentiating between "a cause of action based on the [oil and gas] regulations" and one under "common law"); *EQT Prod.*, 870 F.3d at 335 (dismissing nuisance allegations because they were not based on common law, but rather sought to "override the state's licensing decisions").

*Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381 (4th Cir. 2013) does not support Plaintiffs' position either. Resp.Br.9. Those plaintiffs pegged their common-law trespass claim to their right to exclude, alleging individualized common-law damages for lost use of property and future liability as a result of the defendant's drilling. 729 F.3d at 383-84. In contrast, Plaintiffs here attempt to enforce a statutory well-plugging duty committed to WVDEP, for which there is no private right of action, while *disclaiming* injury for lost use of property (and personal injuries). JA474.

Nor does *Atkinson v. Virginia Oil & Gas Co.*, 79 S.E. 647 (W.Va. 1913), support Plaintiffs. In that case—decided long before WVDEP's creation—plaintiff's common-law claims were not purportedly derived from statutory obligations, as Plaintiffs' claims are here. Rather, they were based on the defendant's alleged failure to exercise "care and caution" which resulted in the degradation of plaintiff's' property. *Id.* at 648. And the claims in *Atkinson* which implicated the defendant's *statutory* obligations were filed under a citizen-suit provision not applicable here. *Id.* at 649.

But in seeking to import WVDEP's statutory requirements into privately-enforceable "common law" claims, Plaintiffs lay bare WVDEP's obvious interests. Adjudicating the merits of any claim derived from WVDEP's regime without WVDEP would violate Rule 19, particularly given WVDEP's undisputed status as a sovereign.

## II.   WVDEP Is A Necessary Party Under Rule 19(a).

### A.   The District Court Cannot Afford "Complete Relief" In WVDEP's Absence.

With a proper understanding of the facts and law, it is clear the district court erred in concluding it could provide Plaintiffs "complete relief," Fed. R. Civ. P. 19(a)(1)(A), in WVDEP's absence. Plaintiffs seek

the prompt plugging of thousands of wells that cannot be plugged without WVDEP's authorization, which a federal court cannot secure absent WVDEP's joinder. *See* WVDEP.Br.6-7. Plaintiffs' assertion—that they seek only money damages—is contradicted by the complaint and their arguments assailing WVDEP's views and would otherwise result in an illusory remedy. Both their so-called "common-law" claims and state-law transfer claims require (or at least implicate) WVDEP.

### 1. Plaintiffs' remedy for their "common law" claims is either incomplete or illusory without WVDEP.

Plaintiffs' complaint betrays their argument that all they want is a multi-million-dollar check. It states: "Plaintiffs want each nonproducing well site to be fully plugged and reclaimed." JA431. Plaintiffs allege "Defendants have violated and will continue to violate Plaintiffs' property rights by failing to promptly plug their wells[.]" JA431. Yet, as they concede, such relief cannot be accomplished without WVDEP's permission. Resp.Br.18, 32. That alone brings this case within the ambit of others like *United States v. Atlantic Wood Industries, Inc.*, where—as Plaintiffs describe—the relevant government agencies "were required parties" because without them, the court could not "ensure" fulsome relief (as opposed to illusory half-measures). Resp.Br.47 (citing 330 F.R.D. 435,

436-37 (E.D.Va. 2019)).  So too here.  Plaintiffs' contrived attempt to describe a remedy that does not run through WVDEP founders on the allegations they actually pled.

Plaintiffs' emphasis on the appointment of a federal receiver to manage well-plugging funds does nothing to further advance their cause. Resp.Br.18.  To effectuate *actual relief*, a receiver would still need WVDEP approval.  Indeed, the very concept of a receiver is antithetical to the notion of "complete relief."  *See Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923) ("A receivership is not final relief.").  "The appointment [of a receiver] determines no substantive right ….  It is a means of preserving property [monetary or physical] which may ultimately be applied toward the satisfaction of substantive rights."  *Id.*; *see Kelleam v. Md. Cas. Co. of Balt.,* 312 U.S. 377, 381 (1941).  A receivership is thus ancillary to the ultimate relief (*i.e.*, Plaintiffs' demand for prompt well-plugging)—which requires WVDEP.  To accept Plaintiffs' position would be to sanction pursuit of a non-final remedy because their ultimate remedy admittedly depends on WVDEP, a non-party.  Neither law nor logic approve of that approach.

Plaintiffs' request for a federal-court-appointed receiver to manage well-plugging also raises far more questions than it answers. Both parties agree that under West Virginia law, an operator applies for a permit to plug a well. *See* Resp.Br.12-13. If a federal court appoints a receiver to apply for permits on behalf of individual Plaintiffs, either WVDEP would be required to treat the federal-court-appointed receiver like an operator (imposing an obligation on non-party WVDEP), or WVDEP would simply ignore the request because there is no statutory basis for such a receiver to request permits. *See* W.Va. Code R. §§35-6-3.

Plaintiffs discount those concerns because, as they put it, nothing *prevents* WVDEP from permitting the prompt plugging of Diversified's wells. Resp.Br.33. But that misses the point. What matters is that, absent WVDEP's joinder, the district court lacks authority to effectuate the relief sought—prompt plugging of wells—through a court-appointed receiver or otherwise. WVDEP is at liberty to deny such well-plugging because it already determined (in the Consent Order) that is *not* in West Virginia's best interests—something WVDEP is charged with considering. WVDEP.Br.6 (noting that "to require the immediate plugging of all wells," as Plaintiffs seek, "would be an unwieldy misuse of

West Virginia's resources"); *see* W.Va. Code §22-1-1. And if the remedy for the only purported (non-disclaimed) injury depends on *voluntary* acquiescence of a non-party, Plaintiffs' claims are not even redressable and must be dismissed. *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 755-56 (4th Cir. 2013).

Plaintiffs, thus, are forced to contest WVDEP's position by arguing the agency cannot deny a permit application or stop well-plugging unless the proposed method of plugging violates West Virginia's technical and procedural requirements. Resp.Br.33. As support, Plaintiffs reference a single regulatory provision laying out the process of filing administrative objections to well-specific proposals. *See id.* (citing W.Va. Code R. §35-4-13.8). That provision does not purport to limit WVDEP's ability to deny permit applications, narrow the agency's considerations, nor dispel its regulatory discretion. Regardless, the mere fact that *Plaintiffs must challenge WVDEP's own interpretation of West Virginia law and its authority thereunder*, demonstrates WVDEP is a necessary party that must be joined before a federal court could resolve the state-law issues.

That said, Plaintiffs are wrong about West Virginia law. There are no strict limits on what WVDEP may consider in balancing its regulatory

objectives; that is why Plaintiffs cite none.[2]  The first article in WVDEP's enabling statute makes clear WVDEP has discretion:  It contemplates "an integrated and interdisciplinary approach" for the agency to address environmental issues "in the most efficient and cost effective manner, to protect human health and safety and … promote economic development." W.Va. Code §22-1-1.  Additionally, the regulations concerning WVDEP's "review of [well-plugging] application[s]" merely provide "[t]he director shall review each application for a well work permit and shall determine whether or not a permit shall be issued." *Id.* §22-6-11.  WVDEP may also prevent an operator from plugging (despite issuing a permit) if the agency deems that "necessary." *Id.* §22-6-28(a).

Particularly relevant here, §35-6-7 authorizes WVDEP to set a plugging schedule so operators may "fulfill the plugging requirements over an extended period."  Whether WVDEP cited that in its Consent Order does not diminish the agency's authority.  *See* Resp.Br.38-39.[3]

---

[2] The provisions Plaintiffs reference largely relate to administrative obligations *of a permit applicant*—not WVDEP's discretion—and to the extent relevant, confirm WVDEP has discretion to consider various interests.  Resp.Br.12-13, 37-39.

[3] Plaintiffs' interpretation of §35-6-7 (permitting extensions for well-plugging) as having no effect on §22-6-19 (requiring prompt plugging)

WVDEP exercised that authority in the Consent Order. WVDEP.Br.4, 6; JA301-303. And although Plaintiffs purport to disclaim any fight with WVDEP (or the Consent Order), they ultimately assault WVDEP's "authority," contending that the agency "gets [West Virginia] law exactly backwards," and that if WVDEP's interpretation of the Consent Order is right, the order is "*ultra vires*" and "contrary to the Legislature's express statements of policy." Resp.Br.10, 37-41, 43-45.

Plaintiffs' assertion that federal courts "routinely" order the type of relief they seek is also unavailing, especially considering they rely on just two cases, neither of which discuss any of the issues relevant on appeal. Resp.Br.33-34 (citing *Balt. Neighborhoods, Inc. v. LOB Inc.*, 92 F.Supp.2d 456, 473 (D.Md. 2000) (passing reference to building permits in ADA context); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 314-15 (1982) (court could, under federal law, require agency-defendant to comport with federal permitting requirement without enjoining its non-permitted activities)).

---

violates a core canon of West Virginia statutory interpretation. *Hammons v. W.Va. Off. of Ins. Comm'r*, 775 S.E.2d 458, 472 (W.Va. 2015) ("[W]e … construe statutes consistently with one another and not … to produce an absurd or inconsistent result[.]").

### 2. Plaintiffs' remedy for their transfer claims is also dependent on WVDEP.

Turning to the transfer claims, Plaintiffs again do not merely seek money damages as complete relief. The remedy for Plaintiffs' alleged voidable transfer claims under Alabama law, and as described in Plaintiffs' complaint, *is avoidance of the transfer, or the unwinding of the transaction itself*. Ala. Code §§8-9A-7, 8-9B-8; JA416 (Plaintiffs "bring this action … to void both the July 2018 … and the May 2020" transfers); JA416 (seeking to return liability for "more than 12,000 wells involved in the transfers back to EQT"); JA473 ("Plaintiffs are entitled to … place the *obligations incurred back onto the transferor, EQT….*" (emphasis added)). *That* relief cannot be effectuated without WVDEP. W.Va. Code R. §§35-6-3, 35-4-10.

It is immaterial whether actual title would have to be transferred under Alabama law, as opposed to only attendant obligations and liabilities. Resp.Br.19-21, 34-36. Under West Virginia's regulatory regime, plugging liability is tied to operator status, such that liability cannot be (re)imposed on EQT without WVDEP reimposing operator status as well. W.Va. Code §§22-6-23, 22-6-24, 22-6-28. And operator status cannot be altered without WVDEP. W.Va. Code R. §§35-6-3, 35-

4-10.  Consistent with the above, "[n]o assignment or transfer … shall relieve the transferor well owner of any obligation and liabilities … unless and until the Office of Oil and Gas accepts [the assignment or transfer]."  *Id.* §35-4-10.3.a.3; *see id.* §35-4-10.5.d.  Yet that is precisely what Plaintiffs seek, without WVDEP.

In any event, the Alabama statute only covers *asset* transfers; it expressly does not address transfers of *obligations*.  Ala. Code §§8-9A-4-cmt.4, 8-9A-7-cmt.4, 8-9B-5-cmt.4, 8-9B-8-cmt.3 ("Although the *Uniform Act covers both transfers and obligations, this chapter applies only to transfers.*  The language in the Uniform Act which deals with obligations is *omitted.*" (emphases added)).  *Ex parte HealthSouth Corp.,* 974 So.2d 288, 297 (Ala. 2007) is largely irrelevant.  The Alabama Supreme Court spoke merely of *title*, not operator status (or obligations) under West Virginia law, and it emphasized the Alabama code relates to a creditor's ability to "execute on" the relevant "assets directly."  *Id.* at 297-298.  Nothing in Alabama law gives a federal court discretion to redistribute West Virginia regulatory obligations without WVDEP.

In the end, no plugging can commence without WVDEP's approval; the money set aside for well-plugging applications would be illusory— except perhaps to Plaintiffs' counsel.

### B. The District Court's Adjudication Of Plaintiffs' Claims Would Impair WVDEP's Interests.

Regardless of the remedies, to resolve even Plaintiffs' so-called "common-law" claims, the district court would be forced to adjudicate how WVDEP's regime works and whether WVDEP acted in accordance with state law in the Consent Order. Not only would that be improper under Rule 19, *see Davis ex rel. Davis v. United States*, 192 F.3d 951, 958-59 (10th Cir. 1999), it implicates the state's contractual and regulatory interests—which would both be impaired absent WVDEP's ability to defend its stated position. Plaintiffs thus try to raise the bar on the Rule 19 inquiry, asserting that precedent requires "*direct* interference" with a sovereign's interests, while suggesting this case involves only some indirect interference. Resp.Br.45-47 (emphasis added). But Rule 19 does not speak in such terms. It requires joinder where disposition of the action in a party's absence has the mere *potential* of harming that party's interests. Fed. R. Civ. P. 19(a)(1) ("may … as a practical matter impair or impede"). The harm to WVDEP's interests are obvious.

### 1. Adjudication of the merits in WVDEP's absence threatens WVDEP's contractual interests.

Plaintiffs first contend WVDEP has no legally protected right to prevent the plugging of wells. Resp.Br.37. But "[t]he inquiry at this stage is more about whether the absent party claims a non-frivolous interest, not the ultimate merit of the claim." *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 266 (5th Cir. 2022). It is undeniable that WVDEP itself claims a "non-frivolous interest" here. Plaintiffs' rejoinders assume WVDEP is simply wrong about West Virginia law, while discounting the Consent Order—a regulatory decision and contract under West Virginia law. JA301.

Contractual rights are perhaps the most basic example of a protectable legal interest. *Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020); Opening.Br.33-34. The cases Plaintiffs cite confirm as much. Resp.Br.36-37 (citing *Cachil,* 547 F.3d at 970-71 (noting "an interest that 'arises from terms in bargained contracts' may be protected"); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1046 (9th Cir. 1983) (rejecting joinder of agency because it was *not* a contractual party)).

Adjudication of Plaintiffs' claims in WVDEP's absence "may … as a practical matter impair or impede [WVDEP]'s ability to protect [its contractual] interest[s]," Fed. R. Civ. P. 19(a)(1)(B), because Plaintiffs' claims amount to a collateral attack on the Consent Order itself. *See* Resp.Br.39-42. WVDEP entered into the Consent Order because it was in the "best interests of the state and its citizens" to create a "schedule" for Diversified's evaluation and plugging or reclamation of the wells. JA302-303; *see* W.Va. Code R. §35-6-7. WVDEP bargained for itself to have "an orderly … [and] systematic review process [that] prevents waste of the State's natural resources and harm to the mineral owners …." WVDEP.Br.3-4; JA304-305. Granting Plaintiffs the relief they actually seek—immediate plugging of all wells as dictated by each Plaintiff and/or a court-appointed receiver—would upset that process and "nullify" the contractual terms of the Consent Order, without WVDEP having a say in the matter. *See* WVDEP.Br.4-6.

Plaintiffs have no meaningful response to WVDEP's contractual interests or the precedent demonstrating WVDEP is a necessary party due to its contractual interests. *See* Opening.Br.32; *Bomer-Blanks Lumber Co. v. Oryx Energy Corp.*, 837 F.Supp. 769, 770 (M.D.La. 1993).

Instead, they double down on attacking WVDEP's "legal authority" to enter the Consent Order. Resp.Br.40-41. Either way, WVDEP's interests are implicated—whether as a contractual counterparty whose contract is attacked in its absence, *see Gunvor*, 948 F.3d at 220, or a sovereign interpreting West Virginia law, *see infra* pp.24-27.[4]

### 2. Adjudication of the merits in WVDEP's absence threatens WVDEP's regulatory interests.

WVDEP's regulatory interests in approving and overseeing the plugging of wells is an independent interest that Plaintiffs themselves describe as "legitimate." Resp.Br.42. Those interests, embodied in the Consent Order, reflect WVDEP's exercise of sovereign authority, to which federal courts owe considerable deference. *See Bragg v. W.Va. Coal Ass'n*, 248 F.3d 275, 297 (4th Cir. 2001).

---

[4] That Plaintiffs' "common-law" claims are inseparable from WVDEP's regulatory scheme and Consent Order sets this case apart from *Cachil Dehe Band of Wintun Indians v. California,* 547 F.3d 962, 970 (9th Cir. 2008). Resp.Br.41-42. Moreover, the Ninth Circuit recognized *Cachil* was inapplicable, and a sovereign was necessary, where (as here) the remedy implicated "already-negotiated" agreements. *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 855 (9th Cir. 2019). As for *Citizens for a Better Environment-California v. Union Oil Co.*, 861 F.Supp. 889 (N.D.Cal. 1994), *aff'd*, 83 F.3d 1111, 1120 (9th Cir. 1996), *see* Resp.Br.42, that case involved an adjudication *on the merits*, with no Rule 19 analysis.

Yet again, Plaintiffs' rejoinder is to say WVDEP was wrong and has no interests implicated by its Consent Order because WVDEP has "no authority" to schedule the plugging of wells as opposed to having them plugged immediately. Resp.Br.43. Whether WVDEP is right or wrong (it is right), WVDEP describes and defends what it did in the Consent Order as amicus on appeal. WVDEP.Br.1-6. Given WVDEP's express position, it is inconceivable that *adjudicating* the merits without WVDEP would not risk impairing or impeding WVDEP's regulatory interests.

Plaintiffs do not even attempt to hide the ball on this point. As highlighted above, they call Diversified's (and ultimately WVDEP's) understanding of the Consent Order "exactly backwards," inconsistent with the agency's "statutory and regulatory authority," unsupported by the terms of the "Consent Order itself," "*ultra vires*," and "contrary to the Legislature's express statements of policy." Resp.Br.43-45. It is difficult to imagine a more express threat to WVDEP's regulatory interests and authority. Rule 19 rightly prohibits consideration of the merits of those issues without WVDEP.

Plaintiffs' assertion that their claims cannot impair or impede WVDEP's regulatory interests "[b]ecause West Virginia law plainly

recognizes the landowners' rights to use … common[-]law [causes of action]," Resp.Br.41, ignores the text of the "savings" clauses they cite, *supra* pp.9-10, and assumes the conclusion that Plaintiffs have such rights *independent of* the statutory regime committed to WVDEP. But, as explained, Plaintiffs' bootstrapping of WVDEP's statutory requirements into the common law is either impermissible or must carry with it WVDEP's interpretation. *Supra* pp.6-12. Plaintiffs' attempt to sidestep *Yashenko v. Harrah's NC Casino Co.* is unavailing. Resp.Br.46. There the sovereign was a necessary party because proceeding without it "threaten[ed] 'to impair … its sovereign capacity to negotiate contracts and, in general, to govern[.]" 446 F.3d 541, 553 (4th Cir. 2006). So too here.

It is no answer to cast the Consent Order as nothing more than an exercise of WVDEP's prosecutorial discretion, with no effect on Plaintiffs' common-law claims based on their allegedly "independent property rights." Resp.Br.39, 41-42. Even assuming that would be true if Plaintiffs' "common-law" claims arose from a pre-existing privately enforceable property right, here they derive (if at all) from the statutory regime committed to WVDEP. *Supra* pp.6-12. Plaintiffs' claims amount

to bootstrapping, pure and simple (plus, their arguments have no bearing on the problems with their transfer claims). But even if Plaintiffs were ultimately right about the merits of the Consent Order or West Virginia common law, that is not the Rule 19 inquiry. Opening.Br.22-23. The fact that a court would have to *decide* these issues, the resolution of which "*may* … as a practical matter impair or impede" WVDEP's interests, means WVDEP is a necessary party.

### 3. *Plaintiffs' fail to recognize that even money is coercive.*

Plaintiffs also fail to respond to the argument that the *threat* of money damages is itself coercive—the risk of which alone could compel Diversified to take actions that "may … as a practical matter impair or impede" WVDEP's interests in its Consent Order. Opening.Br.47-48. That point has added force given Plaintiffs' desire for a receiver, who could compel Diversified to take actions inconsistent with what WVDEP identified as the appropriate manner to protect West Virginia's interests. *See* WVDEP.Br.4-6. To award such an "extraordinary remedy" in WVDEP's absence violates Rule 19. *See* 13 James Wm. Moore et al., *Moore's Federal Practice* ¶66.04[2][a] (2023); *Cf. Kelleam*, 312 U.S. at 380-82 (rejecting claim for receivership).

**C.** **The District Court's Adjudication Of Plaintiffs' Claims Would Subject Diversified To A Substantial Risk Of Double, Multiple, Or Inconsistent Obligations.**

WVDEP is also a necessary party because adjudicating this case on the merits would subject Diversified "to a substantial risk of incurring double, multiple, or … inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B). Like the district court, Plaintiffs give these elements short shrift and misconstrue the relevant standard. Resp.Br.47-49.

There is a fundamental inconsistency in the remedy Plaintiffs seek—including appointment of a receiver to seek well-plugging forthwith—and the terms of WVDEP's Consent Order. *Supra* pp.23. It is folly to suggest that such a remedy would "create *no* risk" of conflict, Resp.Br.48, given WVDEP's Consent Order set in place an "orderly" and "systematic review process" for scheduled (not immediate) well-plugging. WVDEP.Br.3-4; JA304-305.

Regardless, Plaintiffs' remedy would plainly risk subjecting Diversified to "double" or "multiple" obligations—from *both* the court-appointed receiver's program *and* West Virginia law (including the Consent Order). Fed. R. Civ. P. 19(a)(1)(B). After all, because plugging liability is tied to operator status, unless the district court deems its

receiver the operator (which would require making WVDEP a party), Diversified could remain liable for plugging the wells—despite having paid damages for the same well-plugging obligations. W.Va. Code §22-6-23, 22-6-24, 22-6-28; W.Va. Code R. §35-4-10.3.a.3 ("No assignment or transfer … shall relieve the transferor well owner of any obligation and liabilities … unless and until the Office of Oil and Gas accepts [it]"); *see* W.Va. Code R. §35-4-10.5.d. Plaintiffs should not be permitted to upend WVDEP's orderly review process and gerrymander a remedy that risks whipsawing Diversified.

*Ohio Valley Environmental Coalition, Inc. v. Maple Coal Co.*, 808 F.Supp.2d 868 (S.D.W.Va. 2011) does not require a different result. There, the court found no conflict between plaintiffs' requested relief and a WVDEP enforcement action because the agency action was "still pending" and any potential conflict was "merely speculative." *Id.* at 876, 889. Moreover, the court held that the plaintiffs' remedy and WVDEP's action sought the same result. *Id.* The opposite is true here: WVDEP's agency action is complete, *see* JA301-08, and, unlike Plaintiffs' remedy (which seeks immediate well-plugging), the Consent Order sets in place a schedule of ordered review and plugging coordinated between

Diversified and WVDEP.  *See Ohio Valley*, 808 F.Supp.2d at 889 n.13 (emphasizing "conflict could arise" if WVDEP were to promulgate "an ordered treatment system").  Regardless, if Plaintiffs are right and the only thing they get from Diversified is damages, then Diversified faces the risk of double liability—payment to Plaintiffs *and* the obligation to still plug.

*Ohio Valley* also involved a lawsuit filed pursuant to a citizen-suit provision under federal law—the Clean Water Act and the Surface Mining Control and Reclamation Act.  *Id.* at 875.  That WVDEP was not a necessary party in a lawsuit concerning *privately-enforceable federal obligations* says nothing of WVDEP's status in this suit, where Plaintiffs seek to enforce *state-law obligations*—indeed, obligations committed to WVDEP, that WVDEP has already interpreted (in the Consent Order) contrary to Plaintiffs' liking—for which there is no private right of action.

Lastly, it is not "mere speculation" or an unsupported "theor[y]" that WVDEP disapproves of Plaintiffs' requests. Resp.Br.47-49.  WVDEP made its views clear in its brief—namely, that "the best means of ensuring appropriate plugging" is the "orderly process … negotiated and authorized in the Consent Order," and that Plaintiffs' remedy "would be

an unwieldy misuse of West Virginia's resources." WVDEP.Br.6. The risk to Diversified of multiple or inconsistent obligations is palpable, and WVDEP's conflicting interests preclude this action from proceeding in its absence.

## III. WVDEP Is An Indispensable Party Under Rule 19(b) Who Cannot Be Joined Because Of Sovereign Immunity.

The district court erred in its Rule 19(b) analysis by giving "insufficient weight" to WVDEP's undisputed "sovereign status" and Plaintiffs seek to affirm that error. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 865 (2008). Where, as here, a state sovereign has a non-frivolous interest in the litigation's subject matter, "there is very little room for balancing of other factors." *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989). The Supreme Court has held considerations like sovereign immunity are so important that they can be "compelling by themselves" even though other factors might require some "balancing." *Pimentel*, 553 U.S. at 863.

Plaintiffs wrongly suggest it would be error to treat WVDEP's sovereign immunity as all but dispositive in a Rule 19(b) analysis, Resp.Br.51, relying on a split decision from the Federal Circuit (*Gensetix, Inc. v. Board of Regents of University of Texas System*, 966 F.3d 1316

(Fed.Cir. 2020)) that—as other courts observed—stands before a "wall of circuit authority" to the contrary. *Lee*, 47 F.4th at 268; Opening.Br.59-60 (collecting cases). Plaintiffs discount those cases in a footnote as involving "interference with concrete, legally-protected interests of a sovereign." Resp.Br.52 n.16. But the same is true here. *Supra* pp.21-27.

Regardless, as set forth below, WVDEP's sovereign immunity puts at least a weighty thumb on the scale in assessing the Rule 19(b) factors.

<u>Prejudice</u>: Plaintiffs ignore WVDEP's express findings about what would be in the best interests of West Virginia and its citizens. Opening.Br.64-65. Instead, they submit neither WVDEP nor Defendants would suffer "serious prejudice" because "Plaintiffs' claims are expressly preserved by West Virginia law and have no impact on WVDEP's authority under the Consent Order." Resp.Br.51-52. That turns on an impermissible merits-based analysis, while misconstruing West Virginia law, the Consent Order, and Plaintiffs' own claims. *Supra* pp.6-12. WVDEP's view that Plaintiffs' remedy would constitute "an unwieldly

misuse of West Virginia's resources," WVDEP.Br.6, demonstrates that factor 1 favors the sovereign.[5]

Tailoring:  Plaintiffs offer no argument about whether prejudice to WVDEP might be avoided by tailoring the requested relief. Opening.Br.62; Resp.Br.51-54.   There is none—merely interpreting WVDEP's organic statute in its absence prejudices the State.

Adequacy:  Plaintiffs misunderstand what it means for a judgment to be "adequate" in the absence of a necessary party.  Resp.Br.53.  Like the Court of Appeals that the Supreme Court reversed in *Pimentel*, Plaintiffs define "adequacy" as "satisfaction of the [Plaintiff] class' claims."  *Pimentel*, 553 U.S. at 870.  "But adequacy refers to the 'public stake in settling disputes by wholes, whenever possible.'"  *Id.*  Here, as in *Florida Wildlife*, Plaintiffs' remedy might not even "end the litigation but instead could set up a battle … over who has the ultimate authority for making [well-plugging] decisions."  859 F.3d at 1319.  Moreover, the

---

[5] Plaintiffs' assertion that WVDEP's interests are unaffected because it "has entered into *numerous* plugging agreements with other operators since the filing of Plaintiffs' complaint," Resp.Br.52, is neither substantiated nor a response to WVDEP's interest in not having its authority under West Virginia law interpreted by a federal court in its absence.

"public interest surpasses the private interests … because it also includes [sovereign] 'considerations of efficiency' that counsel in favor of limiting the expenditure of public resources to one [process], rather than multiple ones, to resolve the same controversy." *Id.*; WVDEP.Br.6.

Alternative Remedies:  Finally, Plaintiffs assert the district court was correct that WVDEP's administrative remedy is insufficient because "damages recoverable in a tort action are broader than [administrative relief]." Resp.Br.53-54.  But Plaintiffs do not seek money damages for injury to themselves or their property—they seek a receivership funded for well-plugging and re-assigning well operators.  Their complaint makes clear they seek money only as a means to the end of well-plugging. JA431.  Plaintiffs could seek *that* relief administratively.  *See* W.Va. Code §22-6-28(a); WVDEP.Br.8.  They could also potentially pursue claims under West Virginia's Administrative Procedures Act.  W.Va. Code §29A-1-1 *et seq.*  Or they could file their state-law claims in state court, where WVDEP's immunity under the Eleventh Amendment would not apply and considerations of comity are not implicated.  And, to be clear, Plaintiffs could file—in whatever court—claims based in contract or common law for *actual* individual injuries (the claims they disclaimed in

hopes of manufacturing a class here), as opposed to seeking private enforcement in federal court of a state-law regime for which there is no private right of action.

## CONCLUSION

The Court should reverse and remand for the district court to dismiss this case.

January 22, 2024,                    Respectfully submitted,

                                     s/ *John C. O'Quinn*

Howard Persinger, III                Daniel T. Donovan
PERSINGER & PERSINGER, L.C.          John C. O'Quinn
237 Capitol Street                   Ragan Naresh
Charleston, WV 25301                 KIRKLAND & ELLIS LLP
(304) 346-9333                       1301 Pennsylvania Ave., N.W.
                                     Washington, D.C. 20004
                                     (202) 389-5000

                                     Kenneth Young
                                     KIRKLAND & ELLIS LLP
                                     609 Main Street
                                     Houston, TX 77002
                                     (713) 836-3600

*Counsel for Defendants-Appellants Diversified Energy Company PLC,*
*Diversified Production LLC, and Diversified Gas & Oil Corporation*

s/ *Anna G. Rotman*
(with permission)

Jennifer J. Hicks
Babst, Calland, Clements &
Zomnir, P.C.
300 Summers Street, Suite 1000
(681) 205-8888

Anna G. Rotman
Nick Brown
Kirkland & Ellis LLP
609 Main Street
Houston, TX 77002
(713) 836-3600

*Counsel for Defendants-Appellants*
*EQT Production Company; EQT Gathering, LLC; and EQT Corporation*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,481 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font

January 22, 2024

s/ <em>John C. O'Quinn</em>
John C. O'Quinn

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ *John C. O'Quinn*

John C. O'Quinn